UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                        CASE NO. 8:25-cv-02656-SDM-NHA

VLADIMIR VOLGAEV,

    Defendant.

_____/

## ORDER

Requesting revocation of his naturalized U.S. citizenship under 8 U.S.C. § 1451(a), the United States sues (Doc. 1) Vladimir Volgaev and moves (Doc. 6) for judgment on the pleadings. Volgaev responds to neither the complaint nor the motion.

## BACKGROUND

### Volgaev's Naturalization

Volgaev was born in the USSR (now Ukraine) in 1951. Volgaev became a permanent resident of the United States on November 3, 2009. (Doc. 1-4) On September 22, 2014, Volgaev submitted to U.S. Citizenship and Immigration Services (USCIS) an application for citizenship based on Volgaev's status as a permanent resident for at least five years. (Doc. 1 at ¶ 7; Doc. 1-4 at 1). In the application, Volgaev answered "No" to the following questions:

> Did you **ever** sell, give, or provide weapons to any person, or help another person sell, give, or provide weapons to any person?
>
> Have you **ever** committed, assisted in committing, or attempted to commit, a crime or offense for which you were not arrested?
>
> Have you **ever** . . . made any misrepresentation to obtain any public benefit in the United States?

(Doc. 1 ¶¶ 9–11; Doc. 1-4 at 15–16) (emphasis in original). On September 17, 2014, Volgaev signed a Form N-400, which certified under penalty of perjury that the application and accompanying evidence was true. (Doc. 1 ¶12; Doc 1-4 at 18)

On November 2, 2015, a USCIS officer interviewed Volgaev to determine Volgaev's eligibility for naturalization. (Doc. 1 ¶ 37) During the interview and consistent with his responses on Form N-400, Volgaev testified under oath (1) that he had never sold, given, or provided weapons to any person, or helped another person sell, give, or provide weapons; (2) that he had never committed, assisted in committing, or attempted to commit a crime or offense for which he was not arrested; and (3) that he had never made any misrepresentation to obtain any public benefit in the United States. (Doc. 1 ¶¶ 38–40)

At the end of the interview, Volgaev again signed the naturalization application and certified under penalty of perjury that the contents were true and correct. (Doc. 1 ¶ 41; Doc. 1-4 at 20) On November 25, 2015, based on Volgaev's responses on Form N-400 and his sworn testimony during the

interview, USCIS approved the naturalization application. (Doc. 1 ¶ 42; Doc. 1-4 at 1)

On January 11, 2016, before naturalization, Volgaev signed Form N-445, Notice of Naturalization Oath Ceremony, certifying that the responses were made by him or at his direction and that each answer was true and correct. (Doc. 1 ¶ 43; Doc. 1-10) On Form N-445, Volgaev answered "No" to the question "Since your interview, have you knowingly committed any crime or offense for which you have not been arrested?" (Doc. 1 ¶ 44) On January 11, 2016, based on the approved application and the responses on Form N-445, Volgaev took the oath of allegiance, obtained United States citizenship, and received Certificate of Naturalization No. 37782056. (Doc. 1 ¶ 45; Doc. 1-11)

### Volgaev's Federal Crimes and Convictions

From October 2011 until his naturalization on January 11, 2016, and while in the United States, Volgaev purchased approximately 1,233 firearm components (including barrels, upper receivers, complete firearms, and ammunition) from Gunbroker.com. (Doc. 1 ¶ 13) He illegally exported the firearm components to Ukraine and concealed the components to evade customs authorities. (Doc. 1 ¶ 14) Emails beginning in June 2015 reveal that Volgaev worked with a co-conspirator in Ukraine to co-ordinate clandestine shipments and avoid detection. (Doc. 1 ¶ 16)

- 3 -

Also, beginning in January 2013, Volgaev falsely asserted in applications for rent subsidies with the U.S. Department of Housing and Urban Development (HUD) that his only income derived from Social Security or Supplemental Security Income benefits. (Doc. 1 ¶¶ 18–25) Volgaev continued falsely asserting the source of his income through his November 29, 2017 application for rent subsidies. (Doc. 1-7 at 27–28) These false statements omitted income and assets derived from exporting firearm components. (Doc. 1 ¶ 27) Relying on Volgaev's falsely reported income and assets in each re-certification application, HUD approved rent subsidies exceeding the amount to which Volgaev was entitled. (Doc. 1 ¶ 28)

On December 17, 2018, Homeland Security Investigations (HSI) arrested Volgaev. In a voluntary interview, Volgaev admitted (1) that he exported firearm components from 2011 to 2018; (2) that he concealed components prepared for export because he knew the unlicensed export of firearms was unlawful; (3) that beginning in 2011, a person in Ukraine paid him to purchase, pack, and ship firearm components to Ukraine; (4) that he earned $400 per month from 2011 to 2013 and $500 per month from 2013 to 2018 for exporting firearm components; and (5) that he lied on the November 2015, December 2016, and November 2017 HUD recertification applications. (Doc. 1 ¶ 15)

On May 17, 2019, in the United States District Court for the Middle District of Florida, the United States charged Volgaev with (1) fraudulently and knowingly attempting to export defense articles within the meaning of the

- 4 -

United States Munitions List from the United States to Ukraine without the required license, in violation of 22 U.S.C. § 2778(b)(2) and 18 U.S.C. §§ 554 and 2, and (2) willfully and knowingly stealing and converting federal housing benefits and subsidies exceeding $1,000, in violation of 18 U.S.C. § 641. (Doc. 1 ¶ 29; Doc. 1-6)

On August 19, 2019, under a plea agreement, Volgaev pleaded guilty to both counts. (Doc. 1 ¶ 30; Doc. 1-7) Judgment was entered on September 5, 2019. (Doc. 1 ¶ 31; Doc. 1-8) On August 4, 2020, Volgaev was convicted on both counts and sentenced to thirty-three months' imprisonment. (Doc. 1 ¶ 33; Doc. 1-9)

## DISCUSSION

### Naturalization Revocation Under 8 U.S.C. § 1451(a)

Revocation of naturalized citizenship requires "clear, unequivocal, and convincing evidence which does not leave the issue in doubt." *Schneiderman v. United States*, 320 U.S. 118, 122 (1943) (internal quotation marks omitted). The government bears the burden of proof in de-naturalization proceedings because of the "importance of the right that is at stake." *Fedorenko v. United States*, 449 U.S. 490, 505–06 (1981). However, "once a district court determines that the Government has met its burden of proving that a naturalized citizen obtained his citizenship illegally or by willful misrepresentation, it has no discretion to excuse the conduct," and must enter a judgment revoking naturalization under 8 U.S.C. § 1451(a). *Fedorenko*, 449 U.S. at 517.

- 5 -

### Judgment on the Pleadings Under Rule 12(c)

After the pleadings close, a party may move for judgment on the pleadings under Rule 12(c), Federal Rules of Civil Procedure. "Judgment on the pleadings is appropriate when no material fact is in dispute and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998) (citations omitted). The pleadings include all exhibits attached to them. Fed. R. Civ. P. 10(c). Accordingly, when a plaintiff moves for judgment on the pleadings, the court accepts as true all factual allegations in the answer and all factual allegations in the complaint that the defendant admits or fails to deny. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

### Volgaev Illegally Procured Naturalization

Illegal procurement occurs when an applicant naturalizes despite failing to comply with all congressionally imposed prerequisites to the acquisition of citizenship. *Fedorenko*, 449 U.S. at 517. 8 U.S.C. § 1427(a)(3) requires that the applicant establish good moral character throughout the statutory period preceding naturalization.

The period during which Volgaev was required to demonstrate good moral character began five years before the naturalization application and continued until the oath of allegiance and Volgaev's admission as a naturalized United States citizen (the statutory period). 8 U.S.C. § 1427(a)(3) (requiring

- 6 -

that "during all periods referred to in this subsection [the applicant] has been and still is a person of good moral character"); 8 C.F.R. § 316.10(a)(1). Volgaev applied for naturalization on September 22, 2014, and became a naturalized United States citizen on January 11, 2016. (Doc. 1 ¶¶ 7, 45) Accordingly, Volgaev was required to demonstrate good moral character from September 22, 2009 — five years before he filed the application — through January 11, 2016.

In addition to the enumerated classes of aliens who lack good moral character under 8 U.S.C. § 1101(f)(1)–(9), Congress included a catch-all provision stating that "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f). Under this authority, USCIS promulgated regulations providing additional criteria for determining whether a naturalization applicant lacks good moral character. 8 C.F.R. § 316.10. An applicant falls within 8 C.F.R. § 316.10(b)(3)(iii) if during the statutory period he commits an act that is "unlawful" and "adversely reflect[s]" on his moral character, unless the applicant establishes extenuating circumstances. This is so even if the applicant was not convicted of the unlawful act. "[A] conviction during the statutory period is not necessary for a finding that an applicant lacks good moral character. It is enough that the offense was 'committed' during that time." *United States v. Suarez*, 664 F.3d 655, 661 (7th Cir. 2011) (discussing 8 U.S.C. § 1101(f)(3) and 8 C.F.R. § 316.10(b)(3)(iii)). "[U]nlawful

acts" include conduct rising to the level of criminality even if a criminal prosecution was not initiated. *Meyersiek v. USCIS*, 445 F. Supp. 2d 202, 205 (D.R.I. 2006).

Here, Volgaev's unlawful acts fall squarely within the catch-all provision. Volgaev's culpability for these acts is undisputed, as is the fact that they occurred during the statutory period for which Volgaev was required to demonstrate good moral character. Volgaev's lack of good moral character is established both by his criminal convictions and by his admissions to federal agents that he began smuggling firearm components well before he naturalized. Specifically, Volgaev's conviction for smuggling goods from the United States establishes that he attempted to smuggle defense articles "[o]n or about November 19, 2018." (Doc. 1-6; Doc. 1-7 at 22–26) Volgaev lacked good moral character during the statutory period because, as he admitted to federal agents, he had engaged in the smuggling scheme for seven years before 2018. (Doc. 1 ¶ 15.A)

Similarly, Volgaev's conviction for theft of government money or property establishes his theft of housing subsidies "[f]rom at least as early as in or around April 2016, and continuing until at least in or around May 2018." (Doc. 1-6; Doc. 1-7 at 26–28) Also, Volgaev admitted that he submitted false information in his November 2015 application for HUD housing subsidies. (Doc. 1 ¶ 15) In addition, Volgaev certified in his January 2013, December 2013, and December 2014 HUD applications that he received no income other

than Social Security benefits. (Doc. 1 ¶¶ 18–23) But Volgaev admitted that beginning in 2011 he earned approximately $400 per month for exporting firearm components. (Doc. 1 ¶ 15.D) Accordingly, these earlier HUD applications were fraudulent also.

Volgaev's unlawful acts during the statutory period evidence his lack of moral character. First, Volgaev "fraudulently and knowingly" smuggled defense articles from the United States in violation of 18 U.S.C. §§ 554 and 2. (Doc. 1-6) The element of fraud in Volgaev's smuggling activities suggest a lack of moral character. *United States v. Dor*, 729 F. App'x 793, 798 (11th Cir. 2018) ("In general, crimes involving dishonesty, false statement, or fraud reflect adversely on moral character."); *see also United States v. Hsu*, 695 F. App'x 393, 398 (10th Cir. 2017) (holding that an applicant's violation of Taiwanese law by attempting to transport a pistol and ammunition in his luggage adversely reflected on his moral character). Similar to the defendant in *Hsu*, Volgaev deceptively evaded laws prohibiting the shipment of munitions abroad, a violation that was "more than just a mild regulatory offense." *See Khamooshpour v. Holder*, 781 F. Supp. 2d 888, 897 (D. Ariz. 2011) (holding that an applicant's violation of the Emergency Economic Powers Act adversely reflected on his moral character when he operated a money-exchange business between Iran and the United States and failed to report the activity to the government because "these laws represent United States foreign policy and national

security being pursued through economic means, and their willful disregard by Mr. Khamooshpour reflects adversely on his moral character").

Second, Volgaev, in violation of 18 U.S.C. § 641, "did willfully and knowingly steal" federal housing benefits exceeding $1,000. (Doc. 1-6) The elements of this offense are (1) that the money or property belonged to the government; (2) that the defendant fraudulently appropriated the money or property to his own use or the use of another; and (3) that the defendant did so knowingly and willfully, and with the intent either temporarily or permanently to deprive the owner of the use of the money or property. *United States v. McRee*, 7 F.3d 976, 980 (11th Cir. 1993). Again, the element of fraud renders Volgaev's offense an unlawful act that evidences his lack of moral character. See *United States v. Dor*, 729 F. App'x 793, 798 (11th Cir. 2018) (affirming denaturalization under the catch-all provision for a defendant who conspired to produce fraudulent identity documents during the statutory period).

Volgaev therefore could naturalize only if he demonstrated extenuating circumstances excusing or mitigating his conduct. 8 C.F.R. § 316.10(b)(3). Extenuating circumstances must pertain to the defendant's culpability for the crime "and its negative impact on his moral character." *United States v. Jean-Baptiste*, 395 F.3d 1190, 1195 (11th Cir.), cert. denied, 546 U.S. 852 (2005). "Extenuating circumstances are those which render a crime less reprehensible than it otherwise would be, or tend to palliate or lessen its guilt." *United States v. Suarez*, 664 F.3d 655, 662 (7th Cir. 2011) (internal quotation omitted).

- 10 -

Volgaev identifies no extenuating circumstance that mitigates the fraudulent conduct underlying his crimes and thus cannot avoid the regulatory bar to establishing good moral character. (Doc. 1 ¶¶ 64–65)

### Volgaev Provided False Testimony to Obtain an Immigration Benefit

Volgaev concedes that he testified falsely to obtain naturalization. Among the enumerated classes of aliens who lack good moral character under 8 U.S.C. § 1101(f)(1)–(9) is any person who testifies falsely to obtain an immigration benefit. 8 U.S.C. § 1101(f)(6); 8 C.F.R. § 316.10(b)(2)(vi). As discussed, by the time of his naturalization interview on November 2, 2015, Volgaev had committed crimes of smuggling and theft for which he had not yet been arrested, had provided weapons to others in exchange for money, and had misrepresented his income to obtain public benefits in the United States. Yet, during the interview, Volgaev falsely denied each of these things. (Doc. 1 ¶¶ 38–40; Doc. 1-4 at 15–16)

Several times in the naturalization process, Volgaev's obligation to answer truthfully was clear. Certifying that his answers were "true and correct," Volgaev signed the naturalization application under penalty of perjury both when he applied and again when he interviewed. (Doc. 1 ¶¶ 12, 41) At the interview, Volgaev swore an oath to answer all questions truthfully. (Doc. 1 ¶ 34; Doc. 1-4 at 20) Nonetheless, Volgaev answered falsely and under oath to questions about his criminal conduct.

Count II requires only that the defendant gave false testimony, even if immaterial, for the purpose of obtaining an immigration benefit. 8 U.S.C. § 1101(f)(6). "The absence of a materiality requirement in § 1101(f)(6) can be explained by the fact that its primary purpose is not . . . to prevent false pertinent data from being introduced into the naturalization process (and to correct the result of the proceedings where that has occurred), but to identify lack of good moral character. The latter appears to some degree whenever there is a subjective intent to deceive, no matter how immaterial the deception." *Kungys v. United States*, 485 U.S. 759, 780 (1988). False statements "made under oath during the interview portion of the naturalization process constitute 'false testimony' within the meaning of section 1101(f)(6)." *United States v. Agyemang*, No. 17-cv-55, 2018 WL 3245048, at *3 n.2 (E.D.N.C. July 3, 2018) (finding that a de-naturalization defendant was precluded from establishing good moral character after falsely denying that he had "ever knowingly committed a crime for which he has not been arrested") (internal citations omitted); see also *Bijan v. United States Citizenship & Immigr. Servs.*, 900 F.3d 942, 946 (7th Cir. 2018) (holding that the applicant provided false testimony and was ineligible for naturalization because "he had to have known his statement was false").

Here, Volgaev "had to have known his statement was false" when he gave the statement at his naturalization interview. *Bijan*, 900 F.3d at 946. And "[e]vidence that an individual knowingly made false statements during a

naturalization interview demonstrates that the statements were made with the intent to obtain an immigration benefit." *United States v. Faris*, No. 17-cv-295, 2020 WL 532890, at \*5 (S.D. Ill. Feb. 3, 2020). Volgaev falsely testified on November 2, 2015 — within the statutory period — and was precluded from establishing good moral character. (Doc. 1 ¶¶ 71–76). Because he was ineligible to naturalize, Volgaev illegally procured his citizenship.

**Volgaev Procured Citizenship by Willfully Misrepresenting and Concealing Material Facts During Naturalization Proceedings**

Section 1451(a) requires revocation of naturalization if citizenship was procured by willfully misrepresenting or concealing a material fact. 8 U.S.C. § 1451(a). To establish procurement of naturalization "by concealment of a material fact or by willful misrepresentation" under Section 1451(a), the government must prove (1) "the naturalized citizen must have misrepresented or concealed some fact," (2) "the misrepresentation or concealment must have been willful," (3) "the fact must have been material," and (4) "the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment." *Kungys*, 485 U.S. at 767. All four elements are satisfied here.

First, Volgaev provided false answers to at least three questions on his written naturalization application. Volgaev answered "No" to Part 11, Question 18, which asks whether the applicant had ever sold, given, or provided weapons to any person or helped another person sell, give, or provide weapons. Volgaev answered "No" to Part 11, Question 22, which asks whether the

- 13 -

applicant had ever committed, assisted in committing, or attempted to commit a crime or offense for which he was not arrested. And Volgaev answered "No" to Part 11, Question 30.I, which asks whether the applicant misrepresented facts to obtain a public benefit in the United States. Volgaev first asserted these falsehoods when he submitted his naturalization application on September 22, 2014, and he repeated the same answers under oath during his naturalization interview on November 2, 2015. In answering, Volgaev concealed his unlawful export of firearm components beginning in October 2011 and his fraudulent applications for HUD housing subsidies beginning in January 2013 — both of which continued through the filing of his written application and the date of his naturalization interview.

Second, each concealment was willful. A misrepresentation is willful if "made deliberately" and "with knowledge of the falsity." *Azim v. U.S. Att'y Gen.*, 314 F. App'x 193, 194 (11th Cir. 2008). Willfulness is distinguished from accident, inadvertence, or a good-faith belief that the claim at issue was true. *United States v. Khan*, No. 3:17-cv-965-J-PDB, 2020 WL 1650599, at *27 (M.D. Fla. Apr. 3, 2020). Nor does willfulness require proof of intent to deceive. *Alfaro v. U.S. Att'y Gen.*, 862 F.3d 1261, 1264 (11th Cir. 2017); see also *United States v. Ahmed*, 735 F. App'x 863, 868 (11th Cir. 2018). Volgaev signed his naturalization application to USCIS for initial processing and again under oath at the conclusion of his naturalization interview. His signatures on both occasions demonstrate the willfulness of his misrepresentations. See, e.g.,

- 14 -

*United States v. Hirani*, 824 F.3d 741, 749 (8th Cir. 2016) (holding that a signature under penalty of perjury affirming an inaccurate representation demonstrates that the misrepresentation was willful).

Volgaev does not dispute that his misrepresentations were deliberate and that he had knowledge of their falsity. Volgaev answered falsely while applying for naturalization, signed the application under penalty of perjury at submission and again under oath at the conclusion of his naturalization interview, and certified the accuracy of his responses on both occasions. Volgaev knew of the criminal conduct he concealed during the naturalization. When he first provided the false answers in September 2014, Volgaev already clandestinely exported firearm components for nearly three years in a manner designed to evade law enforcement. Volgaev's admission to federal agents that he had lied on his HUD subsidy applications confirms that Volgaev knew his statements were false when, to obtain public benefits, he denied misrepresentations.

Third, Volgaev's failure to disclose the facts of his criminal conduct when required to disclose was material because the omission had a "natural tendency to influence" the decision on the naturalization benefit for which he applied. *Kungys*, 485 U.S. 759, 772 (1988). The "natural tendency to influence" inquiry focuses on "what would have ensued from official knowledge of the misrepresented fact." *Kungys*, 485 U.S. at 775. A misrepresentation is material if either the fact itself was relevant to the applicant's eligibility for naturalization or the misrepresentation predictably would have disclosed other facts

- 15 -

relevant to that eligibility. *Kungys*, 485 U.S. at 774. Whether a misrepresentation or concealment is material in a denaturalization proceeding is a question of law. *Kungys*, 485 U.S. at 772.

Volgaev's concealment of his criminal firearms smuggling and theft of government funds was material. Had Volgaev disclosed during the naturalization process that he had engaged in criminal conduct since 2011, the disclosure would have naturally tended to prompt further inquiry into the nature and extent of that conduct. By concealing these acts, Volgaev deprived the government of the opportunity to determine whether the conduct disqualified Volgaev's naturalization. *See Kungys*, 485 U.S. at 782 (Brennan, J., concurring); *United States v. Khan*, 2020 WL 1650599, at *29. Including the commission of unlawful acts reflecting adversely on moral character and crimes involving moral turpitude, Volgaev's concealed conduct implicated several independent bars to establishing good moral character. *See* 8 U.S.C. § 1101(f); 8 C.F.R. § 316.10(b)(3)(iii); 8 U.S.C. § 1101(f)(3) (cross-referencing 8 U.S.C. § 1182(a)(2)(A)); 8 C.F.R. § 316.10(b)(2)(i).

Fourth, Volgaev procured citizenship through his misrepresentations. The test for "procurement" is whether it is "fair to infer that the citizen was actually ineligible" for naturalization. *United States v. Latchin*, 554 F.3d 709, 713–14 (7th Cir. 2009); *United States v. Pirela*, 809 F.3d 1195, 1200 & n.2 (11th Cir. 2015); *United States v. Khan*, 2020 WL 1650599, at *29–30 (M.D. Fla. Apr. 3, 2020) (applying the "fair inference" test in a civil denaturalization action).

- 16 -

Here, Volgaev's concealment of his misrepresentations to obtain public benefits and his commission of crimes for which he had not yet been arrested resulted in the procurement of citizenship because the facts permit a "fair inference" that he was ineligible to naturalize. Volgaev's fraudulent submission of HUD housing applications beginning in January 2013 to obtain public benefits—resulting in the receipt of government housing funds to which he was not entitled and constituting the elements of a federal crime for which he was later convicted—supports that inference. As discussed in Section III.A, Volgaev's crime of Theft of Government Money constitutes an unlawful act reflecting adversely on his moral character. Because he committed this offense within the statutory period preceding naturalization, he was ineligible to naturalize.

Likewise, Volgaev's concealment of his commission of crimes for which he had not been arrested and his concealment of providing weapons to another person independently support the inference that he was ineligible to naturalize. Volgaev's clandestine export of firearm components beginning in October 2011 was another unlawful act reflecting adversely on his moral character, and it likewise occurred within the statutory period. Volgaev procured citizenship by willfully misrepresenting and concealing material facts during the naturalization process — facts that, if disclosed, would have prompted investigation into his eligibility and revealed conduct rendering him ineligible to naturalize.

- 17 -

## CONCLUSION

As conclusively established by the pleadings, Volgaev illegally procured his naturalization as charged in Counts I and II and procured naturalization by concealment and misrepresentation of a material fact as charged in Count III. The government's motion (Doc. 6) for judgment on the pleadings is **GRANTED**. Volgaev's naturalization is **REVOKED**, and Certificate of Naturalization No. 37782056 is **CANCELLED**.

ORDERED in Tampa, Florida, on March 23, 2026.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 18 -